IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EVERETT KEITH THOMAS,          :
    Plaintiff,          :
              :
v.          :          CIVIL ACTION NO. 21-CV-0441
              :
CITY OF PHILADELPHIA, *et al.*,          :
    Defendants.          :

### MEMORANDUM

SÁNCHEZ, C.J.                                             MARCH 1, 2021

Plaintiff Everett Keith Thomas, a pretrial detainee incarcerated at the Curran-Fromhold

Correctional Facility ("CFCF"), brings this *pro se* civil action pursuant to 42 U.S.C. § 1983,

raising constitutional claims based on assorted conditions of his confinement.  He seeks to

proceed *in forma pauperis*.  For the following reasons, the Court will grant Thomas leave to

proceed *in forma pauperis*, dismiss his Complaint, and give Thomas an opportunity to file an

amended complaint.

## I.      FACTUAL ALLEGATIONS

Thomas named the following Defendants in his Complaint: (1) the City of Philadelphia;

(2) the Philadelphia Department of Prisons; (3) Commissioner Blanche Carney; (4) Major

Gianetti, identified as the Warden of CFCF; (5) John/Jane Doe, identified as "Commissioner of

Operations"; (6) John/Jane Doe, identified as "Deputy Commissioner of Operations"; (7) C/O

Edwards, identified as a housing officer on BI-Pod 2; (8) C/O Hester, identified as a housing

officer on BI-Pod 2; (9) C/O John Doe, identified as a housing officer on BI-Pod 2; and (10)

Corizon Health Care Services ("Corizon").[1]  The individual Defendants are sued in their individual and official capacities.

It appears that Thomas arrived at CFCF on December 9, 2020.  (ECF No. 2 at 7.)[2]  He alleges that he was not given a COVID-19 test upon intake.  (*Id.* at 8.)  On December 11, 2020, Thomas was housed in a "multipurpose room" for six days without access to showers or the law library.  (*Id.*)  He also alleges that the emergency call button was disabled.  (*Id.*)  Thomas claims that on December 16, 2020, there was "sewage water contaminated with urine & feces" and that correctional officers "did not provide any gloves or cleaning supplies & served food trays for dinner in the multipurpose room on 3 pm to 11pm shift."  (*Id.*)  Thomas was housed in another "multipurpose room" on December 26, 2020.  (*Id.*)  He alleges that he has not been able to access the law library and has not been assigned a social worker.  (*Id.* at 7.)

The cover letter that Thomas provided with his Complaint suggests that he has been in a "multipurpose room" for over thirty-seven days, and that he has been "a victim of constant lockdowns, no access to law library or legal material to retain legal counsel, no social worker

---

[1] Thomas attached to his Complaint a list of parties that includes additional Plaintiffs in this case. (ECF No. 2 at 2.)  However, none of those individuals signed the Complaint in accordance with Federal Rule of Civil Procedure 11 or submitted the fees or a motion for leave to proceed *in forma pauperis* in this case.  Additionally, the allegations of the Complaint are written in the first person, using "I" to presumably refer to Thomas.  Thomas may not pursue claims on behalf of others.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))); *see also Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim." (quotations omitted)).  Accordingly, to the extent Thomas intended to raise claims on behalf of others, these claims are dismissed without prejudice to them pursuing their own lawsuits, should they seek to do so.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

visit since [his] incarceration." (*Id.* at 1.)  He also alleges in that letter that he has been in a multipurpose room for "over a week" without access to showers, phone calls, clean clothing, or clean sheets.  (*Id.*)

Thomas alleges that he suffered severe headaches "due to straining [his] eyes," that his sick call slips have not been answered, and that he has been exposed to disease, presumably COVID-19.  (*Id.* at 8.)  Thomas alleges that he filed grievances about his conditions of confinement, and that Defendants Edwards and Hester, and a Lieutenant not named as a Defendant, ignored him.  (*Id.* at 11.)  He claims that the conditions of his incarceration violated his constitutional rights and seeks damages.  (*Id.* at 8.)

## II.     STANDARD OF REVIEW

The Court grants Thomas leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   Conclusory allegations do not suffice.  *Id.*  As Thomas is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[3] However, as Thomas is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

## III.    DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Thomas has not alleged a plausible basis for a constitutional violation. Even if he had, he has failed to allege a plausible basis for a claim against any of the named Defendants.

### A.    Failure to State a Constitutional Violation

The Court understands Thomas to be pursuing claims for unconstitutional punishment based on the conditions of his confinement, claims for deliberate indifference to his medical needs, and claims for denial of access to the courts.

### 1.    Conditions of Confinement

Since Thomas is a pretrial detainee, the Fourteenth Amendment governs his claims. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). To satisfy the objective component, inmates must demonstrate that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Id.* In other words, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from

4

which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Thomas has not alleged a plausible constitutional claim based on the conditions of his confinement.  That is in large part because his allegations are vague and generalized.  Since his allegations are unclear, it is difficult for the Court to understand the details of what happened to him, and what the factual contours of his claims are.  Thomas's submission indicates that he was held in different multipurpose rooms for over thirty-seven days, but it is not clear how long he was exposed to each of the conditions of which he complains.  The Court has nevertheless done its best to understand Thomas's allegations.

Thomas primarily appears to be claiming that being housed in a multipurpose room violates his constitutional rights.  However, housing multiple inmates in a cell does not alone establish a constitutional violation.  *See Hubbard v. Taylor*, 538 F.3d 229, 236 & n.6 (3d Cir. 2008) (pretrial detainees do not have a right "to be free from triple-celling or from sleeping on a mattress placed on the floor."); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam) ("Double or triple-bunking of cells, alone, is not per se unconstitutional.").  Although Thomas indicates that, at times, he was subjected to unsanitary conditions or that he was denied showers, he has not stated a plausible constitutional violation because he has not provided enough factual detail from which it could be inferred that the overcrowded conditions amounted to punishment, deprived him of a basic need, or otherwise caused him harm.  *See Seiter*, 501 U.S. at 305 ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and

unusual punishment when no specific deprivation of a single human need exists."); *Bell v. Wolfish*, 441 U.S. 520, 542-43 (1979) (double-bunking did not violate constitutional rights of pretrial detainees when detainees had sufficient space for sleeping and use of common areas, and the average length of incarceration was 60 days); *Hubbard*, 538 F.3d at 232-35 (triple-celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment); *see also Walker v. George W. Hill Corr.*, Civ. A. No. 18-2724, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding that prisoner plaintiff's claims that "he was forced to share a cell with two other individuals and that he was forced to sleep on the floor inside what was described as a boat unit" and that "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet bowl" failed to state a Fourteenth Amendment claim with respect to allegations of overcrowding).

It is not clear how long Thomas claims to have been denied showers. It appears he was not able to access a shower for six days and then, possibly on another occasion, for over a week. Even construing these allegations liberally, they fail to state a claim. *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days. Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise."); *Coleman v. Hodges*, Civ. A. No. 18-1152, 2018 WL 6618459, at *5 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) ("To the extent that Plaintiff claims his mere placement in the RHU and the mere imposition of the restrictions regarding a mattress,

6

showers and exercise for four days constituted "punishment" as prohibited by *Bell v. Wolfish*, he fails to comprehend the meaning of "punishment" as used in *Bell* and in the Fourteenth Amendment context concerning pre-trial detainees."); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 471 (E.D. Pa. 2007) (plaintiff failed to state a constitutional claim based on allegations "that he was denied the means to maintain a clean cell, he was not permitted to shower regularly, and he was shackled everywhere he went").

Thomas also alleges that there was "sewage water contaminated with urine & feces" and that correctional officers "did not provide any gloves or cleaning supplies & served food trays for dinner in the multipurpose room on 3 pm to 11pm shift." (ECF No. 2 at 8.) The context of this allegation is not clear. Specifically, it is unclear what the duration of this event was or whether it was more than a one-time event. It is also not clear how the allegation about the food relates to what happened with the sewage water. Accordingly, this statement is too vague and unclear to state a constitutional violation.

Thomas also complains that he has not received a visit from a social worker and that, in one of the rooms where he was held for six days, the emergency call button was disabled. However, these facts alone do not plausibly allege deliberate indifference. Thomas does not allege how he was harmed by these conditions or how he was deprived of a basic need in violation of the constitution.

In sum, Thomas's Complaint, as pled, does not state a plausible constitutional violation based on the conditions of his confinement.

### 2. Deliberate Indifference to Medical Needs

To state a claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.

7

*See Farmer*, 511 U.S. at 835.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Thomas's claims based on medical needs primarily appear to concern his allegation that he was not given a test for COVID-19 upon intake and that he was exposed to disease.  However, he has not alleged any facts supporting his allegation that he was so exposed.  Nothing in the Complaint alleges that Thomas or other inmates exhibited any symptoms of COVID-19, such that a test or other measures were warranted, or that there were other facts or lack of procedures suggesting an unreasonable risk of exposure.  Absent additional allegations, the failure to provide Thomas a COVID-19 test upon intake does not amount to a plausible deliberate indifference claim.  Thomas also generally refers to eye strain and alleges that sick call slips he has submitted have not been answered.  However, these allegations do not establish a serious medical need, nor do they support a plausible inference of deliberate indifference.  Absent further specific factual allegations about Thomas's alleged medical needs, the dates and circumstances of his conditions and requests for care, and the responses or interactions, if any,

about that care, Thomas has not alleged a plausible claim for deliberate indifference to his serious medical needs.

### 3. Denial of Access to the Courts

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action).  In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415.  "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*.  Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Thomas generally alleges that he has not been able to access the law library.  But he does not provide any additional information about any claims he seeks to pursue.  The cover letter that Thomas submitted with his Complaint suggests that, in addition to this lawsuit, he might be seeking to pursue four additional civil rights lawsuits raising unspecified claims. (ECF No. 2 at

1.)  Without specific factual allegations about these claims or why Thomas's inability to access

the law library has prevented him from pursuing them, let alone an allegation that a nonfrivolous

and arguable claim was lost, he has not stated a plausible claim for denial of access to the

courts.[4]

### B.   Failure to State a Basis for the Defendants' Liability

Even if Thomas had alleged a constitutional violation, he has failed to allege a plausible

basis for each Defendant's liability.

#### 1.   Claims Against Philadelphia Department of Prisons

Thomas has named the Philadelphia Department of Prisons as a Defendant in this lawsuit

but "[a] department[ ] of the City of Philadelphia itself, [is] not [a] proper defendant[ ]" in an

action brought under § 1983. *Russell v. City of Philadelphia*, 428 Fed. App'x 174, 177 (3d Cir.

2011) (citing 53 Pa. Con. Stat. Ann. § 16257; *Bey v. City of Philadelphia*, 6 F. Supp. 2d 422, 423

(E.D. Pa. 1998)); *see also Durham v. Philadelphia Prison Sys.*, Civ. A. No. 18-2113, 2018 WL

3105589, at *2 (E.D. Pa. June 25, 2018) (explaining that the "Philadelphia Prison System is not

an entity that is subject to suit separate from the City of Philadelphia.") (citing 53 Pa. Cons. Stat.

Ann. § 16257).  Because this Defendant is not considered a "person" for purposes of § 1983,

*Durham*, 2018 WL 3105589 at *2, Thomas's claims against it are dismissed with prejudice.

#### 2.   Claims Against City of Philadelphia, Corizon, and Official Capacity Claims

Official capacity claims are indistinguishable from claims against the entity that employs

the officials.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . .

---

[4] In the event Thomas sought to use the law library to assist with criminal proceedings, it is unclear how the inability to do so deprived him of access to the courts.  Notably, the docket for a recent criminal proceeding initiated against Thomas reflects that he is represented by counsel. *See Commonwealth v. Thomas*, MC-51-CR-0033345-2019 (Phila. M.C.).

'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Since Thomas's official capacity claims against employees and officials of the City of Philadelphia are essentially the same as his claims against the City of Philadelphia, the Court will analyze these claims together according to the standards for pleading a municipal liability claim.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, the Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to

deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  *Id.*  The standards for pleading a municipal liability claim apply equally to private corporations under contract to provide medical services to prisoners.  *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (acknowledging that entity contracted to perform medical services for county jail is state actor for purposes of § 1983); *see also Talbert v. Corizon Inc*, 711 F. App'x 668, 670 (3d Cir. 2017) (*per curiam*) ("[T]he District Court properly determined that Talbert failed to state a claim against Corizon pursuant to [*Monell*], because he failed to allege facts plausibly demonstrating the existence of a relevant custom or policy of Corizon.").

Nothing in the Complaint alleges that the conditions or conduct of which Thomas complains was the result of a policy or custom of the City of Philadelphia or Corizon. Accordingly, Thomas has failed to state a plausible claim against the City of Philadelphia, the individual Defendants in their official capacities, or Corizon.

### 3.  Individual Capacity Claims Against Defendants Edwards, Hester and John Doe Housing Officer

To state a claim against a Defendant in a § 1983 action, a plaintiff must allege facts explaining that Defendant's involvement in the claimed constitutional violations.  That is because "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable . . . ."  *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Thomas provides almost no allegations about what Defendants Edwards, Hester and John Doe Housing Officer did

12

to violate his constitutional rights.  He alleges only that Defendants Edwards and Hester generally ignored his grievances.  (ECF No. 2 at 11.)  Not only is this allegation too unspecific to state a claim against these Defendants for a constitutional violation, but, if Thomas intended to bring a claim based solely on these Defendants' handling of grievances, he may not do so. *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*) (explaining that "[p]rison inmates do not have a constitutionally protected right to a grievance process.").  In sum, Thomas has not plausibly alleged that these Defendants violated his constitutional rights.

### 4.  Individual Capacity Claims Against Defendants Carney, Gianetti and Remaining Doe Defendants

Thomas has also failed to plausibly allege that Defendants Carney, Gianetti, John/Jane Doe Commissioner of Operations and John/Jane Doe Deputy Commissioner of Operations violated his constitutional rights.  It appears that Thomas may have sued these Defendants because of their high-level or supervisory positions at CFCF.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015).  First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as

the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.

Thomas has not plausibly alleged that these Defendants, though their action or inaction, violated his constitutional rights. He has not specified any personal conduct or claimed that they were responsible for a policy or custom that led to the violation of his rights. Nor has he alleged that these Defendants directed their subordinates to violate his rights or knew of but acquiesced in constitutional violations committed by their subordinates. In sum, Thomas has not alleged a plausible basis for these Defendants' liability.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Thomas's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will dismiss Thomas's claims against the Philadelphia Department of Prisons with prejudice because the defects in those claims cannot be cured. However, the Court will dismiss the remainder of the Complaint without prejudice to Thomas filing an amended complaint that provides specific allegations in support of his claims. An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, C.J.**

14